UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOSEPH KING | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:10-CV-177-TLS |
| | ) | |
| ANTHONY WAYNE HOLDINGS, LLC, | ) | |
| a/k/a ANTHONY WAYNE SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Plaintiff, Joseph King, believes that his former employer, Anthony Wayne Services (AWS), was motivated by unlawful retaliation when it issued him several disciplinary warnings and terminated his employment. The Defendant has moved for summary judgment on the Plaintiff's Title VII and 42 U.S.C. § 1981 retaliation claims. (Mot. for Summ. J., ECF No. 13.) Also before the Court is the Defendant's Motion to Strike Portions of the Affidavits of Ken Vonderhaar and Valeria Walker [ECF No. 30].

## PROCEDURAL BACKGROUND

On May 3, 2010, the Plaintiff filed a Complaint against AWS in the Allen Superior Court, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The Complaint sets forth that the Plaintiff worked for the Defendant as a personal assistant to mentally handicapped clients, that on June 29, 2009, the Plaintiff filed a Charge of Discrimination protesting AWS's scheduling and client assignment decisions on grounds that they were based on his Black/African-American race, and that following the filing of the Charge the Defendant subjected him to unjustified disciplinary action and terminated his employment. The

Plaintiff alleges that his termination was based on his race and in retaliation for filing a Charge of Discrimination.

On June 4, the Defendant removed the matter to federal district court, and on June 18 filed its Answer to the Complaint. On December 29, the Defendant filed a Motion for Summary Judgment [ECF No. 13] and Memorandum of Law in Support of Motion for Summary Judgment [ECF No. 14]. The Defendant argues that it is entitled to summary judgment on the Plaintiff's race discrimination and retaliation claims because the Plaintiff cannot establish a prima facie case of discrimination or retaliation, and legitimate non-discriminatory and non-retaliatory reasons motivated the Defendant's actions.

On May 3, 2011, the Plaintiff responded [ECF Nos. 25 & 26] to the Defendant's Motion for Summary Judgment. He submits that, after the completion of discovery and review of the evidence, he "has chosen not to proceed further with his race/color discrimination claim under either Title VII or § 1981, and only pursue his retaliation claims." (Pl.'s Mem. 1–2, ECF No. 26.) The Plaintiff asserts that his designated evidence establishes a prima facie case of retaliation and that a number of facts and the reasonable inferences from those facts point to the false and pretextual nature of the Defendant's offered reason for terminating his employment.

On May 31, the Defendant filed a Reply Brief in Support of Defendant's Motion for Summary Judgment [ECF No. 29]. One of the arguments the Defendant advances is that the Plaintiff cited to inadmissible evidence in support of his arguments in response to summary judgment. The challenged evidence is the subject of the Defendant's Motion to Strike Portions of the Affidavits of Ken Vonderhaar and Valeria Walker [ECF No. 30], also filed on May 31. The Defendant's Motion to Strike prompted a Response [ECF No. 31] and a Reply [ECF No. 32].

2

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure state that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The motion should be granted so long as no rational fact finder could return a verdict in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249–50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). According to Rule 56:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Shepherd v. Slater Steels Corp*., 168 F.3d 998, 1009 (7th Cir. 1999). *See also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be

outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

## STATEMENT OF FACTS

The Plaintiff began his employment with the Defendant on May 31, 2005. The Defendant employed the Plaintiff as a personal assistant to mentally handicapped individuals who were clients of AWS. The duties of a personal assistant are to meet client's activity needs, including transporting them to appointments, workshops, and outings. Personal assistants also help clients at home with meal preparation and household chores.

## A.      Circumstances Leading Up to the Charge of Discrimination

In November 2008, the Plaintiff was assigned as a personal assistant to Sam Dunning. The Plaintiff submitted a written request to his supervisor, Vivian Bradley, asking that he be assigned to a different client because Sam was not being cooperative with him and other AWS staff. The Plaintiff believed that this request was forwarded to Program Coordinator, Teri Rosalez. From November 2008 to June 2009, circumstances surrounding his client assignment and work hours led the Plaintiff to believe that Rosalez was treating him less favorably than she treated a white employee and was doing so on the basis of his race. On June 29, 2009, the Plaintiff filed a Charge of Discrimination alleging race discrimination.

**B.      Circumstances Leading Up to Termination of Employment**

In March 2009, the Defendant gave the Plaintiff a written warning for falsifying records

and put him on probation for thirty days. The Plaintiff had turned in a mileage report in February

stating that he took his client, Sam, to a movie theater in the Georgetown shopping complex.

However, that theater had ceased operating on January 29, 2009. According to the Plaintiff, he had

mistakenly written Georgetown because that is where he usually took Sam to see movies. The

Plaintiff actually took Sam to the Coventry dollar theater, which was further away than

Georgetown. The warning the Plaintiff received required him to take the following action:

> [P]rovide a mileage record based on the actual mileage of your odometer beginning
> point and ending point each time you go to a location. This report is to also include the
> destination. This is to be done on a daily basis and to be turned in each week on Friday
> to your Supervisor.

(3-9-09 Disciplinary Rep., ECF No. 13-1 at 27.) The Plaintiff and Bradley signed the disciplinary

report. The Plaintiff successfully completed the probationary period, which ended on April 9.

In June, the Plaintiff filed the Charge of Discrimination. Nearly one month later, on July

23, the Plaintiff again received a disciplinary report for falsifying records related to his mileage and

for failure to follow instructions. The report contained the following explanation:

> You have been claiming a large quantity of mileage for each shift you work with
> clients. You usually claim an average of 20 miles per day per client. This does not
> seem to vary whether you work 8 hours with a client or if you work 3 hours with a
> client. On March 9, 2009 when you received a written disciplinary action regarding
> this same issue[, y]ou had been claiming mileage for taking a client to a theater that
> was closed down. In order to assist you with the prevention of future issues of this
> nature you were instructed to keep a **detailed daily log** of your mileage and turn it in
> each Friday to your Supervisor. You were to provide the actual mileage based on your
> odometer reading at the start of the trip and the reading at the end of the trip. You were
> also to include the destination. To date, you have not turned any of this requested
> documentation in to me and you continue to get excessive unexplained mileage each
> day. You are being required to turn this information in to me each week effective
> immediately.

5

(7-23-09 Disciplinary Rep., ECF No. 13-1 at 28.) The Plaintiff signed the report on July 27 after meeting with Bradley, who also signed the report. The Plaintiff indicated in the employee comment section that he would continue to turn in his mileage and explain it carefully. Since completing probation, the Plaintiff had been reporting his mileage documentation on a Data Tracker form. The Plaintiff was not informed that the Data Tracker information was insufficient until the July report, and even then was informed by Bradley that the data was sufficient as long as it contained the actual mileage from his odometer. The Data Tracker form does not contain a space to provide odometer readings.

On July 24, the Plaintiff was the subject of a third disciplinary report, which cited carelessness, failure to follow instructions, and inability to perform work duties. The report stated that, on July 20, the Plaintiff transported his assigned client, Don, to his scheduled workshop without a lunch. Bradley, who completed the report, stated that the Plaintiff was responsible for packing the lunch and that because the Plaintiff did not notify her or mention to anyone that Don did not have a lunch, that she was led to believe that he did not even notice that he did not have his lunch. The Plaintiff responded that he did not know what happened, as he was sure he packed Don a lunch that day. Later, the Plaintiff checked his log notes for July 20 and discovered that he packed Don's lunch. The Plaintiff showed his notes to Bradley.

On July 30, the Plaintiff received another disciplinary report because he talked to Don about the missing lunch. Specifically, the Plaintiff told Don that he had been written up because Don told staff that the Plaintiff did not pack him a lunch for the workshop, which was upsetting to Don. The report stated that the Plaintiff had received training regarding proper conduct with staff, clients and others involved with AWS and that this was the Plaintiff's "final warning regarding

your job performance. Any further infractions of any nature which violate any policy of AWS will result in the immediate termination of your employment with AWS." (7-30-09 Disciplinary Rep., ECF No. 13-1 at 30.) The Plaintiff admitted in the comment section of the report that he made an unprofessional mistake by discussing a situation with a client that upset him.

On August 14, the Defendant issued the Plaintiff a disciplinary report for violation of company rules, improper conduct, failure to follow instructions, and inability to perform work duties. The report stated that the Plaintiff had still not complied with the requirements for reporting mileage. In addition, the report stated that it had been discovered that the Plaintiff was taking Don to the Plaintiff's Thursday evening Bible studies at his church in violation of AWS policy that staff are not to attend functions of a personal nature with clients and that any exception must be approved by their supervisor. Further, on August 3, it was discovered that the Plaintiff took Don to a special music event at the Plaintiff's church where the Plaintiff played the drums, which put the Plaintiff in a position of being incapable of attending to his client's needs. The August 14 report resulted in the Plaintiff's termination from AWS employment. Bradley, Rosales, and Angie Young, the Human Resources Recruiter, met with the Plaintiff to discuss the disciplinary report and to inform him that his employment was terminated. Young spoke to the Plaintiff about his mileage. In response, the Plaintiff told Young that he had been turning in his daily Data Tracker logs, but she said that AWS did not use Data Trackers. When confronted about leaving Don unattended while he played the drums, the Plaintiff told Young that a former AWS employee was sitting next to Don. Young said this did not matter because he was not a current AWS employee. The Plaintiff also told Young that Bradley had given him permission to attend church events. Bradley said she did not remember giving the Plaintiff permission and then denied giving him such permission.

According to the Plaintiff, Bradley was fully aware that the Plaintiff brought Don to the church events and had authorized hm to do so. He asked Bradley in May 2009 if he could bring Don to a special musical event at his church where the Plaintiff would be playing the drums. Bradley responded that it would be okay if it was alright with Don. The Plaintiff told Bradley that Don had already said he would like to go. Bradley told the Plaintiff that she would let Rosalez know about going to church. Later, Bradley asked the Plaintiff if another staff member would be there to stay with Don while the Plaintiff was playing the drums. He informed her that a former AWS employee as well as a former State Developmental Center worker who was familiar with Don would be in attendance. The Plaintiff assumed that because Bradley indicated it was permissible to bring Don to the musical performance in May, that it was alright to do so for the August 3 performance. The Plaintiff also maintains that he had permission from Don's guardian to take Don to church with him.

During the Plaintiff's portion of the musical performance, which lasted five to seven minutes, he remained no more than twenty feet away from Don and kept Don within his sight. During the performance, Don also remained seated next to a former AWS employee, Jermaine Jackson.

## DISCUSSION

Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The Supreme Court has also determined that § 1981, which prohibits racial

discrimination in making and enforcing contracts, encompasses retaliation claims. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008). The same elements apply to both Title VII and § 1981 claims of retaliation. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

A plaintiff may establish unlawful retaliation using either the direct or indirect method of proof. *Id.* Here, the Plaintiff relies on the indirect method of proof. Under this method, a plaintiff establishes a prima facie case of retaliation by presenting evidence that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; (3) he was meeting his employer's legitimate expectations; and (4) he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009); *Stephens*, 569 F.3d at 786. If the plaintiff succeeds in passing this initial hurdle, the burden shifts to the defendant to demonstrate a nondiscriminatory reason for its action. *Scruggs*, 587 F.3d at 838; *Stephens*, 569 F.3d at 787. If the defendant does so, the plaintiff can avoid the entry of summary judgment against it by showing that a genuine issue of material fact exists as to whether the defendant's proffered reason was pretextual. *Scruggs*, 587 F.3d at 838 (citing *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008)).

Because the Plaintiff filed a Charge of Discrimination and was terminated from his employment, the Defendant does not dispute that the Plaintiff meets the first and second prongs of a prima facie case of retaliation. The Defendant argues that the Plaintiff cannot meet the third and fourth elements of a prima facie case because he was not meeting its legitimate expectations or treated less favorably than similarly situated employees who did not engage in protected activity. The nondiscriminatory reasons the Defendant offers for its employment action—that the Plaintiff violated its policies by failing to follow mileage reporting requirements, failing to pack a lunch for

9

his client and discussing the resulting disciplinary issue with the client, attending functions of a personal nature without prior supervisory approval, and leaving his client unattended—are the same reasons that the Defendant offers to show that he was not meeting its legitimate expectations. The Defendant contends that these policy violations, and not the Plaintiff's Charge of Discrimination, motivated its decision.

The Plaintiff denies that the Defendant's explanation accounts for his termination. He argues that he complied with the mileage reporting requirements, that other employees engaged in substantially similar violations or violations of a more serious nature but faced no adverse employment action, that Bradley gave him the requisite prior approval to take his client to church functions, and that he did not leave his client unattended. These arguments, in which the Plaintiff attempts to establish a genuine issue of material fact as to whether the Defendant's proffered reasons were a pretext for retaliation, overlap with the second and fourth prongs of a prima facie case. Stated differently, the Plaintiff argues that the Defendant is lying about its legitimate employment expectations to set up a false rationale for terminating his employment. "Where a plaintiff claims . . . that an employer's legitimate expectations were disparately applied, the second and fourth elements of the *prima facie* case are closely intertwined with the pretext analysis, and the two inquiries may be merged and considered together." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008); *see also Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477–78 (7th Cir. 2010) ("In some cases . . . the issue of satisfactory performance and the question of pretext overlap" because '[w]hen the employer asserts as the nondiscriminatory reason for termination that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the second element of the plaintiff's prima facie case and

10

the pretext analysis."); *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002)

("When a plaintiff produces evidence sufficient to raise an inference that an employer applied its

legitimate employment expectations in a disparate manner . . . the second and fourth prongs of

*McDonnell Douglas* merge—allowing the plaintiff to establish a prima facie case, stave off

summary judgment for the time being, and proceed to the pretext inquiry."); *Curry v. Menard*, 270

F.3d 473, 478 (7th Cir. 2001) (stating that a court can assume that a plaintiff has met the legitimate

expectations element of a prima facie test where that element dovetails with the issue of pretext);

*Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) ("As we have pointed out on

several occasions, this issue of satisfactory job performance often focuses on the same

circumstances as must be scrutinized with respect to the matter of pretext."); *Oest v. Ill. Dep't of

Corr.*, 240 F.3d 605, 612 n.3 (7th Cir. 2001) (noting that the "district court correctly held that the

second prong, meeting the employer's legitimate business expectations, was not necessary to the

analysis" because "the people judging [the plaintiff's] performance were the same she accused of

discriminating against her"); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515 (7th Cir. 1999)

(stating that it made "little sense" to discuss whether the plaintiff was meeting her employer's

reasonable expectations where she admitted that she broke the rules but claimed that the employer

disciplined her more harshly than non-Hispanic rule-breakers). Because the Plaintiff's prima facie

case overlaps with the pretext analysis, the Court will proceed directly to the question of pretext,

*Scruggs*, 587 F.3d at 838, *Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007),

"bearing in mind that without sufficient evidence of pretext" the Plaintiff "cannot show that he was

meeting [his employer's] legitimate expectations," *Senske v. Sybase, Inc.*, 558 F.3d 501, 507 (7th

Cir. 2009) (citing *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006)).

11

Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). To demonstrate pretext, the Plaintiff must show that the Defendant did not honestly believe the reasons it gave for terminating his employment. *Everroad*, 604 F.3d at 479. An employer's justification may be considered pretextual where the plaintiff demonstrates that it had no basis in fact, it did not actually motivate the decision to terminate employment, or it was insufficient to motivate that decision. *Radentz v. Marion County*, 640 F.3d 754, 757 (7th Cir. 2011); *see also Senske*, 558 F.3d at 507 (explaining that for the plaintiff to show that the employer's reasons were not credible, he had to point to evidence that they were not the real reasons, were not grounded in fact, or were insufficient to warrant the adverse decision). "The focus for the court is not whether the defendants' decision was a wise one, but whether it was honestly believed. If a reasonable factfinder would be compelled to believe the defendants' explanation, then the defendants are entitled to summary judgment." *Radentz*, 640 F.3d at 757 (quotation marks and brackets omitted) (quoting *Argyropoulos*, 539 F.3d at 736; *Culver v. Gorman & Co.*, 416 F.3d 540, 547–48 (7th Cir. 2005)).

Although the Defendant's decision to terminate the Plaintiff's employment was not based on a single event, the Plaintiff has presented evidence to call into question the Defendant's most serious allegations against him. The Plaintiff's evidence creates a genuine issue of fact concerning whether Bradley honestly believed that the Plaintiff violated the Defendant's policy when he took Don to Bible studies and musical events at church and left him seated with a former AWS employee while the Plaintiff played the drums.

To begin with, there is some ambiguity regarding the requirements of the AWS policy in effect at the relevant time, particularly as it relates to personal activities. Young contends that

12

Exhibit A to her Affidavit is a true and accurate copy of the AWS Professional Conduct Policies in effect during the Plaintiff's employment. (Young Aff. ¶ 13, ECF No. 13-3.) The first page of Exhibit A is an undated, one-page document entitled Professional Conduct Policy. This Policy states that staff are required to get prior approval from the Program Coordinator before including a client in "a personal activity," and states that the activity must occur during unpaid time. (Young's Aff., Ex. A, Professional Conduct Policy, ECF No. 13-3; Pl.'s Mem, Ex. 15, ECF No. 26-15.) According to this Policy, staff must also obtain approval from the client's guardian prior to the outing. A separate provision of the same Policy advises AWS staff that they shall not conduct "personal business," such as making and receiving telephone calls, text messaging, or visiting family and friends, during work. (*Id.*)

The second page of Exhibit A is a separate document that also purports to explain the Professional Conduct that is expected of AWS employees. This one-page document claims an effective date of October 1, 2006, and revision dates of April 1 and November 1, 2008. Exhibit B to Young's Affidavit is an Employee Acknowledgment of Professional Conduct Policy signed by the Plaintiff on May 31, 2005 (notably, before the effective date of the second document of Exhibit A).

The Plaintiff states in his Affidavit that the first document was not the version of the Policy in effect in 2009 when he was terminated from his employment. Instead, he asserts that Plaintiff's Exhibit 10 is a copy of the Policy that was in effect. Because Exhibit 10 is a letter the Plaintiff wrote to Vivian Bradley (King Aff. ¶ 7, ECF No. 26-2; Letter, ECF No. 26-10) and is not related to the Professional Conduct Policy, the Court assumes that the Plaintiff intended to reference Plaintiff's Exhibit 16, which is the same as the second page of Young's Exhibit A. In addition, by

13

the time the Defendant filed its Reply, it appeared to abandon the first document attached to Young's Affidavit as the basis for the Defendant's disciplinary action against the Plaintiff in connection with taking Don to church. In its Reply Brief, the Defendant states that it "agrees that the applicable Professional Conduct Policy is [the Plaintiff's Exhibit] 16," which "dictates that employees are not to conduct personal business at work." (Reply Br. 4, ECF No. 4.)

Young states in her Affidavit that the Plaintiff was terminated for failing to follow AWS policies. Without referencing a specific policy provision, she states that it is against AWS policy for a personal assistant to attend functions of a personal nature with clients, that any exception must be approved by a supervisor, and that she did not give the Plaintiff permission to take his client to the church events. (Young Aff. ¶¶ 7–8, ECF No. 13-3.) If Young intended to base her statements on the first page of Exhibit A (which the Defendant now concedes was not in effect during the Plaintiff's employment), it requires the approval of the Program Coordinator, not the supervisor. In addition,  Young was not the Plaintiff's supervisor or the Program Coordinator and thus her approval is immaterial. Bradley was the Plaintiff's supervisor, and the Plaintiff maintains that he personally obtained her approval to bring Don to church functions, specifically to a musical event where the Plaintiff would be playing the drums. The Plaintiff also designates the Affidavit of Valeria Walker, who was one of the personal assistants for Don during the relevant time in 2009. Walker asserts that she talked to Bradley after Mother's Day 2009 to ask if she and other personal assistants who worked different shifts could take Don to church and church-related activities. (Walker Aff. ¶ 8, ECF No. 26-6.) She maintains that Bradley approved taking Don to church activities as long as Don wanted to go. Walker states that she communicated Bradley's approval to the Plaintiff, who then began taking Don to a Bible study at church. Walker also states, based on

14

her experience at AWS as both a supervisor and personal assistant, that it was AWS procedure for the personal assistants to make notes in a house staff communication log each time that they took a client to an outing or appointment. The supervisor was to review the log and initial if she approved the outing or appointment. If the supervisor did not sanction the outing, she was to make a note to the staff so they would know not to take the client to the activity or place again. Walker submits that when Bradley was supervising her and the Plaintiff as personal assistants to Don, she consistently observed Bradley's initials on the communication log to indicate her review, but that she does not recall ever seeing instructions that Don was not to be taken to church or church activities.

In its summary judgment materials, the Defendant does not address the evidence regarding the communication log, Bradley's initials, or the absence of a note in response to Don's church outings. It is undisputed that Bradley was one of the decision makers involved in the decision to terminate the Plaintiff's employment and that taking Don to church events was one of the reasons the Defendant cited for terminating the Plaintiff's employment. The fact that Bradley disputes that she gave the Plaintiff prior approval to take Don to church activities does not entitle the Defendant to summary judgment. Because the Court must consider the facts in a light most favorable to the Plaintiff, her denial merely creates a genuine issue of fact whether the Defendant's reasons for terminating the Plaintiff's employment were credible. Moreover, the version of the Professional Conduct Policy that the parties now agree was in effect does not include a provision that requires staff to get prior approval before including a client in a personal activity. The Policy only says that employees are "not to conduct personal business during work." (Pl.'s Mem., Ex. 16 at ¶ E, ECF No. 26-16.) Examples of personal business included in this prohibition are "making and receiving

phone calls, answering pages, text messaging, visiting family or friends whether at the client's home or at staff's home, inviting friends and family on activities, bringing children to work, [and] taking the client to a family function." (*Id.*) A plain reading of this provision does not appear to be directed at activities, such as a Bible study, that the client may be interested in attending. Indeed, this same provision regarding personal business appears in the undated version of the Professional Conduct Policy along with a second, separate provision discussing the requirements for including a client in a staff member's personal activity. This suggests that the two provisions are intended to be directed at different conduct. Regardless of the Policy in effect, the Plaintiff has presented evidence that he obtained his supervisor's approval to take Don to church events.

The Defendant maintains that in addition to failing to obtain prior approval, the Plaintiff abandoned Don during the Plaintiff's drum performance. This issue, however, cannot be separated from the issue of approval because the Plaintiff states that Bradley, when she gave him permission to take Don to the musical performance, was aware that the Plaintiff would be performing and that a former AWS employee would stay with Don. Although there is no evidence to suggest that Young did not honestly believe that the former AWS employee's presence was insufficient, Young was not the decision maker. The Defendant has identified Bradley and Rosalez as the employees who were involved in the decision to terminate the Plaintiff's employment. (Interrog. Resp. No. 3, ECF No. 26-7 (stating that Bradley and Rosalez were involved in the decision to terminate the Plaintiff's employment and that, as a Human Resources Recruiter, Young was "present" on August 14, 2008, when the Plaintiff's employment was terminated).) When Young told the Plaintiff that former AWS employee Jackson's supervision was not sufficient, Bradley did not provide any clarification regarding her prior approval, which included approval for the Plaintiff to leave Don

with Jackson while the Plaintiff played the drums. Instead, she denied having granted the Plaintiff

permission to bring Don to the musical event. Viewing the record before the Court in a light most

favorable to the Plaintiff, a reasonable factfinder would not be compelled to believe the

Defendant's explanation for the disciplinary report that culminated in the termination of the

Plaintiff's employment.

The Plaintiff also argues that another employee who did not make a charge of

discrimination, Brian Parrea,[1] was treated more favorably than the Plaintiff was treated when he

was not disciplined for committing serious violations of AWS policies. "When a plaintiff claims to

have been disciplined more harshly than other, similarly situated employees based on a prohibited

reason, the plaintiff typically must demonstrate that the other employees 'engaged in similar

conduct without such differentiating or mitigating circumstances as would distinguish their conduct

or the employer's treatment of them.'" *Everroad*, 604 F.3d at 479 (citing *Antonetti v. Abbott Labs.*,

563 F.3d 587, 592 (7th Cir. 2009)). The Plaintiff again designates Walker's Affidavit testimony in

support of his argument that the Defendant enforced its policies in a disparate manner. Walker was

a supervisor from the beginning of her employment with AWS, June 2007, until Fall 2007, when

she voluntarily left the supervisory position to become a personal assistant. In these roles, she

received training in AWS policies, practices, and procedures. In her capacity as a supervisor,

Walker observed that Parrea repeatedly failed to give his client prescribed medication and failed to

consistently document his activity with clients in the state log book or staff communication book.

The staff book is used to monitor a personal assistant's attentiveness to clients' needs and

---

[1] In various places throughout the record, Brian's last name is presented as Parrea, Parra, and
Parrer. The Court will use the spelling above throughout.

activities, and the state log book is used by the State of Indiana to determine whether AWS remained in compliance with state regulations for the care of its clients. According to procedures in place at the time Walker observed Parrea's failing, a supervisor could not impose discipline against an employee unless the supervisor first obtained permission from the Program Coordinator. Walker stated that she recommended to the Program Coordinator, Rosalez, that Parrea's employment be terminated, but that Rosalez "would not allow me to either fire or write him up." (Walker Aff. ¶ 13, ECF No. 26-6.) Walker was one of the personal assistants for Don during the fall 2008, the same time that Parrea was Don's personal assistant. She recounts an incident in 2008 when Parrea did not take Don to a medical provider for treatment after he hurt his foot and it became infected. Instead, when Walker came to work for her shift, she took Don to a RediMed facility and a doctor's office, where it was determined he was suffering from cellulitis, a potentially serious bacterial skin infection that should not be left untreated. Walker reported Parrea's oversight to Bradley, who was their supervisor. There is no indication in the record what, if any, discipline Parrea received. Walker also reported Parrea to Bradley in 2009 after she learned from a client that he took the client to Roanoke for personal business and left him alone in the car. The record does not indicate what action Bradley or Rosalez took to investigate or discipline Parrea—only that he continued to work at AWS. Indeed, whether Parrea actually engaged in such conduct is also unknown, as Walker only heard about the incident from the client. The Court does not consider Walker's testimony concerning these events for the truth of the matter—that Parrea actually drove a client to Roanoke for his own personal business and left the client unattended.[2] Thus, the 2009

---

[2] Walker's statements regarding what the client told her are the subject of the Defendant's Motion to Strike. To the extent the Plaintiff seeks to admit the out of court statements to establish the truth of the matter being asserted, the Motion is granted. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (noting that hearsay contained in an affidavit is inadmissible in summary judgment proceedings); Fed. R.

incident has little evidentiary value.

In its Reply Brief, the Defendant acknowledges the Plaintiff's evidence that Parrea failed to obtain proper medical care for his client, but states that Parrea "is not a similarly situated employee because the circumstances are vastly different." (Def.'s Reply 8, ECF No. 29.) Upon making this argument, the Defendant does not attempt to explain how the circumstances are so different. The Defendant's Reply does not address the Plaintiff's evidence regarding Parrea's failure to maintain proper documentation in the state log book or staff communication book. The Seventh Circuit has stated that a common-sense factual inquiry is necessary to determine whether comparators are similarly situated. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). The comparator must be similar enough "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, [so as to] isolate the critical independent variable: complaints about discrimination." *Id.* Both Parrea and the Plaintiff were personal assistants subject to the same policies when Rosalez was the ultimate decision maker for disciplinary matters. During the 2008 incident, both men were supervised by Bradley. Parrea's conduct appears at least as severe as failing to pack a lunch, discussing a disciplinary matter with a client, or failing to include odometer readings on mileage reports. Walker has stated that during her employment with the Defendant from June 2007 to July 2010, she has never known another employee to be written up for failing to pack a lunch or failing to send a lunch with a client to an outing, despite having observed staff make this mistake on a number of occasions. When the

---

Civ. P. 801(c). It is not necessary for the Court to rule on the portion of the Defendant's Motion to Strike that addresses the Affidavit of Ken Vonderhaar as the Court does not consider the challenged testimony in ruling on the Motion for Summary Judgment.

Plaintiff brought his client to a workshop without his lunch, he was given a written warning.[3] When

Parrea failed to give a client prescribed medications or to document his activities in the state log

book and staff communication log, Rosalez would not authorize written discipline. When Parrea

later failed to obtain proper medical care for his client, the discipline, if any was imposed, allowed

Parrea to retain his employment with AWS. The differing treatment despite the similarities

between the Plaintiff and Parrea is sufficient to allow a jury to decide whether the Defendant

applied its legitimate employment expectations to the Plaintiff in a retaliatory manner.

The Plaintiff also takes issue with his discipline regarding the mileage reports, arguing that

he was in compliance with the mileage log instructions. In March 2009, the Plaintiff had been

directed to provide a mileage record based on the actual mileage of his odometer beginning point

and ending point each time he went to a location, and to include the destination. Again on July 23,

he was directed to provide the actual mileage based on his odometer reading at the start and end of

the trip. The mileage logs provided by the Plaintiff do not contain any odometer readings. (Mileage

Logs, ECF Nos. 26-12 & 26-13.) The Plaintiff provides only the destination and the total mileage

claimed. Although there is evidence that the Plaintiff may have been confused regarding his

mileage reporting obligations, there is no evidence that the Defendant did not actually believe that

the Plaintiff was failing to follow its mileage reporting instructions. What is unclear from the

---

[3] The disciplinary report for failing to pack a lunch indicates that the Plaintiff had been "informed and instructed verbally on several occasions to pay attention to clients and their needs." (7-24-09 Disciplinary Rep., ECF No. 13-2 at 6.) The Plaintiff states that at the time he was disciplined concerning Don's lunch, he had not been repeatedly warned by Bradley or anyone else to pay more attention to client needs or to stop forgetting or ignoring their needs. (Pl.'s Aff. ¶ 12, ECF No. 26-2.) The Employee Disciplinary Report form that the Defendant uses to make an official record of discipline provides the following action options: verbal warning; written warning; probation; suspension; and; termination. The Plaintiff did not receive any reports that indicated he was verbally warned about being more attentive to client needs.

current record is how the Plaintiff successfully completed the probationary period if his reports *never* contained the requisite odometer reading. (*See* 7-23-09 Disciplinary Rep., ECF No. 13-1 at 28(stating that "[t]o date, you have not turned any of this requested [mileage] documentation in to me").) It is also unclear from the record before the Court if successful completion of the probationary period meant that the Plaintiff was no longer required to submit mileage reports that contained the odometer readings for each trip. In other words, it appears at the very least that some of the Plaintiff's confusion was justified and, making inferences most favorable to the Plaintiff, that the Defendant did not consider it necessary to take additional disciplinary action for the mileage reporting the Plaintiff offered in response to being placed on probation until after the Plaintiff filed a Charge of Discrimination.

Some of the other evidence that the Plaintiff designates in an attempt to show disparate treatment is not convincing. In an attempt to show that his conduct during the church musical event should not have been characterized as leaving his client unattended, the Plaintiff points to other activity for which AWS staff is not disciplined even though they leave their clients unattended. AWS personal assistants are allowed to bring their clients to softball practices and games in which the clients participate and, afterwards, to a local restaurant. While at the softball games, personal assistants remain in the bleachers, at least seventy feet away from their clients who are playing in the field. At the restaurant, AWS staff are permitted to let their clients leave their immediate presence to go about twenty feet away to the rest room. These scenarios do not create an issue of fact regarding unequal application of AWS policies. First, the softball games are AWS-sponsored events. The church event was not. Second, it is the clients, and not the personal assistants, who participate in the softball games and practices. At the music event the Plaintiff was the one being

distracted by an activity—playing the drums. Third, the Plaintiff himself took his client to softball games and post-game gatherings and was not disciplined. This suggests equal, not disparate, application of the AWS policy with respect to these outings. Likewise, the Plaintiff's evidence regarding what staff were allowed to do with "higher functioning clients" is immaterial as there is no evidence that Don was such a client.

Despite the weakness of the some of the Plaintiff's comparative evidence, this case involves conflicting testimony on at least one central issue—whether Bradley gave the Plaintiff approval to take his client to a personal activity where the client would be briefly supervised by a former AWS employee. If Bradley gave the Plaintiff such permission, which the Court must assume she did for purposes of summary judgment, a jury could determine that the Defendant's justification for terminating his employment had no basis in fact and that his Charge of Discrimination was the real reason for the adverse employment action. The Plaintiff has also presented evidence that brings into dispute whether Bradley granted the Plaintiff approval to take his client to other, regularly scheduled church events. When this is combined with evidence that the Defendant disciplined the Plaintiff for failing to send a lunch with his client, a mistake that typically did not justify a written warning, and a similarly-situated employee was not disciplined for more severe violations, the Plaintiff has affirmatively demonstrated that there is a genuine issue of material fact for trial on his retaliation claim.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment [ECF No. 13] is GRANTED IN PART with respect to the race discrimination claims and DENIED IN PART with

respect to the retaliation claims, and the Defendant's Motion to Strike Portions of the Affidavits of Ken Vonderhaar and Valeria Walker [ECF No. 30] is GRANTED IN PART and DENIED IN PART AS MOOT.

SO ORDERED on September 7, 2011.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT